UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| PATRICK MANIACI, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br> vs.<br><br>THE RECEIVABLE MANAGEMENT SERVICES CORPORATION, D/B/A RMS,<br><br>   Defendant. | Case No.: 18-cv-200<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Patrick Maniaci is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect a debt from him allegedly incurred for personal, family or household purposes.

5. Defendant The Receivable Management Services Corporation ("RMS") is a foreign corporation with its principal place of business located at 240 Emery Street, Bethlehem, Pennsylvania 18015. Its registered agent for service of process in Wisconsin is C T Corporation

System, 301 S. Bedford St., Suite 1, Madison, Wisconsin 53703. It does business under the fictitious or trade name "RMS."

6. RMS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. RMS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. RMS is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

9. RMS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

10. On or about February 9, 2017, RMS mailed a debt collection letter to Plaintiff's former address in Sheboygan, Wisconsin, regarding an alleged debt, allegedly owed to "VONAGE." A copy of this letter is attached to this complaint as Exhibit A.

11. The alleged debt was incurred for personal telephone services. *See* https://www.vonage.com/personal. The alleged debt was thus incurred for personal, family or household purposes.

12. Exhibit A was the first letter that RMS sent to Plaintiff regarding the alleged debt referenced in Exhibit A.

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

14. Upon information and belief, Exhibit A is a form, initial communication, debt collection letter used by RMS to attempt to collect alleged debts.

2

15. Exhibit A contains the FDCPA validation notice (*see* 15 U.S.C. § 1692g(a)):

**IMPORTANT INFORMATION**

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice RMS will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

16. Exhibit A also states:

**IMPORTANT: REFER TO CLAIM NUMBER IN ALL COMMUNICATIONS**

17. Exhibit A also states:

```
If you have not yet been contacted by an RMS representative, you will be
receiving a call to bring this matter to a resolution.  Should you
receive this letter after a discussion with our representative, we thank
you for your cooperation.
```

## **VIOLATIONS OF THE FDCPA**

18. The text in RMS's letter to Plaintiff and the class is inconsistent with 15 U.S.C. § 1692g(a), which states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of

3

> a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

19. <u>Exhibit A</u> directs the consumer to "REFER TO CLAIM NUMBER IN ALL COMMUNICATIONS; however, nothing in 15 U.S.C. § 1692g(a) requires that the "claim number" be included in the written dispute.

20. Failure to provide the correct validation notice, or overshadowing it with confusing, contradictory, or apparently contradictory language, is a *per se* violation of the FDCPA. No analysis of materiality of the error or omission is required. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

21. For the purposes of Plaintiff's claims under 15 U.S.C. § 1692e, such a false statement is a material false statement, as it imparts in the unsophisticated consumer a false belief about the requirements to dispute a debt. *See Mikolajczyk v. Universal Fid., LP*, 2017 U.S. Dist. LEXIS 24587, at *11 (E.D. Wis. Feb. 22, 2017) (misrepresentation that consumer should provide a reason for dispute was material because it "may dissuade her from exercising her unfettered right under the FDCPA to dispute the debt.").

22. In general, false, misleading or confusing statements about the debt itself, or about the creditor's, debtor's or debt collector's rights or intentions, are all material. *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

23. The unsophisticated consumer would be confused by the language in RMS's letter. The consumer would be misled into believing that a written dispute sent without the "claim number" would be disregarded or otherwise not treated as a dispute.

24. RMS's language imposes additional requirements on debtors wishing to dispute a debt.

25. RMS also misleads debtors as to what they actually need to do to dispute a debt.

26. <u>Exhibit A</u> also contains the following:

```
If you have not yet been contacted by an RMS representative, you will be
receiving a call to bring this matter to a resolution.  Should you
receive this letter after a discussion with our representative, we thank
you for your cooperation.
```

<u>Exhibit A</u>.

27. The unsophisticated consumer would understand the statement that, "If you have not yet been contacted by an RMS representative, you will be receiving a call to bring this matter to a resolution," to mean that RMS would be calling the consumer within a few days or weeks, and certainly within the next thirty days after the consumer received <u>Exhibit A</u>.

28. The representation that RMS would call the consumer within a few days or weeks, and certainly within the next thirty days after the consumer received <u>Exhibit A</u>, is false, deceptive, misleading, and confusing to the unsophisticated consumer and is inconsistent with the statutory disclosure of the consumer's right to dispute the debt.

29. The validation notice in <u>Exhibit A</u> contains three statements relating to the consumer's right to dispute the debt. *See* 15 U.S.C. § 1692g(a)(3)-(5).

30. The debt collector must inform the consumer that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3).

31. The representation that RMS would call the consumer within thirty days after the consumer received <u>Exhibit A</u> is inconsistent with the disclosure that the consumer must notify the debt collector that the debt is disputed to prevent the debt collector from assuming its

5

validity. The unsophisticated consumer would understand the representation to mean that he could wait for the debt collector to contact him by telephone and dispute the debt at that time.

32. The representation also implies that the consumer need not submit a written dispute because an RMS representative will contact the consumer by telephone, when, in fact the consumer needs to provide written notification of his dispute to require the debt collector to provide verification of the debt. 15 U.S.C. § 1692g(a)(4); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 738 (N.D. Ill. 2003) ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector *may* provide verification upon *oral* notification, the debt collector *must* provide verification upon *written* notification. If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.").

33. The representation that the debt collector will call the consumer within thirty days to "bring this matter to a resolution" after receipt of the validation notice is also inconsistent with the disclosure that the consumer may submit a written dispute because doing so would require the debt collector to cease its attempts to collect the debt, until after it obtained, and provided the consumer with, verification of the debt or a copy of a judgment against the consumer.

34. Reasons that collection efforts could be "brought to a resolution" include the consumer has already paid the debt, that the consumer never owed the debt, or that the debt collector is dunning the wrong person. Each of these are "disputes" that must be communicated in writing to trigger the protections of 15 U.S.C. § 1692g(b). *McCabe*, 272 F. Supp. 2d at 738.

35. Representing that the debt collector will call implies to the unsophisticated consumer that disputing a debt in writing would be futile, as RMS will expect to "bring this matter to a resolution" long before responding to a written dispute, and implies to the consumer

6

that he may not have the full thirty-day period to dispute the debt. *See Glackin v. LTD Fin. Servs., L.P.*, 2013 U.S. Dist. ELXIS 108031, at *7-8 (E.D. Mo. Aug. 1, 2013) ("an unsophisticated consumer would likely believe that setting up payment arrangements *would act as a waiver of the right to dispute the debt.*") (emphasis added); *see also, Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008) ("The aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options.").

36. Upon information and belief, RMS does not telephone consumers within the thirty-day validation period.

37. Moreover, whether or not the debt collector actually intends to call the consumer during the validation period, the representation that it will do so is false and misleading because it implies that the consumer need not take steps to affirmatively contact the debt collector and provide notification of the dispute.

38. Even if the debt collector intends to call the consumer, telephone numbers frequently change, and the telephone number that the debt collector has on file may be out-of-date. *See, e.g., Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

39. Additionally, where language in a form letter would confuse a statutory disclosure under 15 U.S.C. § 1692g(a), the debt collector's subjective status with respect to that disclosure is irrelevant. *E.g., Janetos*, 825 F.3d at 325 (confusion about the identity of the creditor was material even though the debt collector was collecting the debt based on legitimate authority from the creditor because "not all consumer debtors will be so lucky.").

40. RMS's actions have the practical effect of discouraging individuals from exercising their dispute rights.

41. Debt collectors have an incentive to avoid processing dispute letters. While the debt collection process is primarily automated, disputes must be processed by hand, and sometimes by an attorney's hand. Written disputes both cause debt collectors to incur costs of time and money to validate debts, and put the collector at risk of FDCPA liability for the subsequent communications related to validation. *See, eg. Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785-86 (6th Cir. 2014) (debt collector's response to consumer's verification request was insufficient and violated 15 U.S.C. §§ 1692e and 1692g). Debt collectors may likewise be concerned that creditors, who must also respond to requests for validation, would be hesitant to use debt collectors whose letters prompt disputes, "wasting" creditors' time by requiring responses.

42. Plaintiff was confused by <u>Exhibit A</u>.

43. Plaintiff had to spend time and money investigating <u>Exhibit A</u>, and the consequences of any potential responses to <u>Exhibit A</u>.

44. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of <u>Exhibit A</u>.

45. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

46. The failure to effectively convey a customer's validation rights can reasonably be expected to harass the customer. Wis. Admin. Code DFI-Bkg. 74.16(9); *see also, Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (debt collector

violated state statute forbidding harassing, abusive, misleading, and unfair collection practices by communicating that a customer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights).

### *The FDCPA*

47. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*,

9

2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

10

48. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

49. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

50. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

51. 15 U.S.C. § 1692g states, in part:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> . . .
>
>> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>>
>> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>>
>> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with

11

>> the name and address of the original creditor, if different from the current creditor.
>
> (b) Disputed Debts
>
> . . .
>
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### *The WCA*

52. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

53. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

54. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

55. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

56. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

57. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

58. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

59. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

60. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

61. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

## COUNT I – FDCPA

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

63. The language in RMS's letter is false, misleading and confusing to the unsophisticated consumer.

64. Exhibit A tells the consumer that disputes must include the RMS "claim number" when the plain language of the statute does not require disputes to include this information. 15 U.S.C. § 1692g(a)(3)-(5).

65. Exhibit A overshadows the validation notice by telling the consumer that an RMS representative would call "to bring this matter to a resolution."

66. Defendant has failed to accurately provide the portion of the FDCPA validation notice required by 15 U.S.C. § 1692g(a).

67. Defendant's letter provides extraneous, false and misleading information that overshadows the FDCPA validation notice, and confuses and misleads the consumer about what he must do to dispute the debt.

68. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692g(a)(3), 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## COUNT II – WCA

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. Defendant is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code DFI-Bkg. Ch. 74.

71. <u>Exhibit A</u> includes false, deceptive, misleading, and confusing statements that overshadow the validation notice and confuse the consumer about how he should notify the debt collector about a potential dispute.

72. The failure to effectively convey a customer's validation rights can reasonably be expected to harass the customer. Wis. Admin. Code DFI-Bkg. 74.16(9); *see also, Flood*, 176 P.3d at 776.

73. <u>Exhibit A</u> is a communication that violates the FDCPA.

74. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## **CLASS ALLEGATIONS**

75. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action (c) seeking to collect a debt for personal, family or household purposes, (d) between February 5, 2017 and April 6, 2018, inclusive, (e) that was not returned by the postal service.

76. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

77. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

78. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

79. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

80. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

81. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: April 13, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com