## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

PATRICK MANIACI, Individually and on Behalf )
of All Others Similarly Situated, )
                                      )
              Plaintiff, )
vs. )
                                        )
THE RECEIVABLE MANAGEMENT )
SERVICES CORPORATION, D/B/A/ RMS, )
                                       )
              Defendant. )

Case No.: 18-cv-200

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Hon. William E. Duffin

Plaintiff Patrick Maniaci ("Maniaci" or "Plaintiff"), through counsel, submits the following brief in opposition to Defendant The Receivable Management Services Corporation d/b/a RMS' ("RMS" or "Defendant") motion to dismiss (Dkt. Nos. 18, 19).

## <u>INTRODUCTION</u>

On February 5, 2018, Plaintiff filed a complaint alleging RMS mailed him a confusing and misleading debt collection letter, in violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") (Dkt. No. 1). RMS moved to dismiss the complaint on March 28, 2018. (Dkt. Nos. 10 and 11). On April 13, 2018, Plaintiff filed a motion to amend the complaint as of course, along with a proposed amended complaint, which clarified how RMS violated the FDCPA, and alleged that RMS also violated the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. ("WCA"). (Dkt. No. 15). The motion to amend was granted, and the proposed Amended Complaint was entered on May 2, 2018. (Dkt. Nos. 16 and 17). RMS filed a motion to dismiss the Amended Complaint on May 16, 2018. (Dkt. Nos. 18 and 19). Because Plaintiff has stated viable claims, the Court should deny RMS' motion.

1

The complaint alleges that RMS mailed Plaintiff and a class of similarly situated individuals initial debt collection letters that included the debt validation notice that the FDCPA requires debt collectors mail to consumers, but also included two statements that contradict, conflict with, overshadow, and confuse the validation notice. First, RMS' letter deceives the unsophisticated consumer by stating that, "If you have not yet been contacted by an RMS representative, you will be receiving a call to bring this matter to a resolution," which misleads the consumer to believe he does need not notify RMS that the debt is disputed to avoid RMS assuming the debt is valid. Second, RMS' letter also states that the consumer must provide his "claim number," which falsely implies to the unsophisticated consumer that RMS is not required to process his dispute unless he provides this information. 15 U.S.C. § 1692g; (Dkt. No. 17 ("Am. Compl."), Exhibit A.).

The validation notice informs the consumer that he has 30 days to notify the debt collector that the debt is disputed, and that the debt collector will provide verification if he disputes it in writing during the thirty-day period. If he disputes it during the thirty-day period, the debt collector cannot assume the debt is valid. If he disputes it in writing during the thirty-day period, the debt collector must also cease collection until it provides verification of the debt or a copy of judgment. 15 U.S.C. § 1692g(b). If the consumer notifies the debt collector that the debt is disputed after the thirty-day period, the debt collector may continue to assume the debt is valid and can continue collecting it, even if there is a written dispute. 15 U.S.C. § 1692g(b).[1]

---

[1] Notably, consumers do retain some dispute rights after the thirty-day period. For example, even though the debt collector is not required to cease collection or provide verification when a debt is disputed after the validation period has run, it still must include the dispute in the consumer's credit report and must not communicate information about the debt to third parties without noting the dispute. 15 U.S.C. § 1692e(8); *Evans v. Portfolio Recovery Assocs., L.L.C.*, 2018 U.S. App. LEXIS 11372 (7th Cir. 2018).

2

RMS' debt collection letter impermissibly contradicts and overshadows the disclosure that the consumer must notify the debt collector that the debt is disputed within thirty days. The letter plainly implies to the consumer that RMS is going to contact him by telephone within thirty days and, therefore, that he does not need to affirmatively notify the debt collector about his dispute to prevent the debt collector from assuming the debt is valid. Hence, the statement contradicts and overshadows the disclosure of the consumer's dispute rights because it encourages consumers to wait for RMS to telephone the consumer. As long as RMS waits 30 days before telephoning the consumer (at which point, the validation period would have ended), RMS could assume that the debt is valid and could continue collecting the debt, even if the consumer disputed it. Moreover, RMS' letter also deceives the consumer by implying that RMS is not required to process the consumer's dispute unless he provided his "claim number." The representation that a debt collector need not process disputes without the consumer's account number is a false statement that directly contradicts the plain meaning and purpose of the FDCPA.

In its motion to dismiss, RMS asserts that its letter does not confuse or overshadow the validation notice because the debt collector is allowed to request the consumer's account number, (Dkt. No. 19 at 5-7, 9-10), and because the statement that RMS will call the consumer does not confuse the validation notice, or mislead the consumer as to his dispute rights. (Dkt. No. 19 at 8, 10-13). RMS further argues that its conduct does not violate the WCA because it does not violate the FDCPA. (Dkt. No. 19 at 13).

RMS' arguments fail on all three counts. First, the unsophisticated consumer would reasonably believe that "IMPORTANT: REFER TO CLAIM NUMBER IN ALL

3

COMMUNICATIONS" could mean that RMS would not be required to process the consumer's dispute unless he provided his claim number. Although a debt collector may *ask* the consumer to provide his account number, it may not mislead him to believe that he *must* provide it. Second, the unsophisticated consumer would reasonably believe that, "If you have not yet been contacted by an RMS representative, you will be receiving a call to bring this matter to a resolution," meant that RMS would be telephoning him during the next thirty days. The statement that RMS will telephone the consumer within thirty days directly contradicts the § 1692g(a)(3) disclosure that the debt collector will assume the debt is valid unless the consumer notifies the debt collector that it is disputed within thirty days after receiving the notice. It also confuses the consumer about his validation rights by implying that he could preserve all of his rights by disputing the debt by phone at that time, rather than in writing. Finally, it also confuses the consumer to believe that RMS will call him even if he disputes the debt in writing, even though RMS could not continue its collection attempts until after it provided verification of the debt.

Because the FDCPA prohibits false and misleading statements, generally, and specifically prohibits statements that may confuse or overshadow the validation notice, RMS' letter violates the FDCPA as a matter of law. RMS' arguments that its letter could not plausibly deceive the consumer are without merit and the motion to dismiss should be denied.

## FACTUAL BACKGROUND

Plaintiff Patrick Maniaci is an individual who resides in the Eastern District of Wisconsin. (Am. Compl. at ¶ 3.) Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that RMS attempted to collect from him a debt incurred for personal, family or household purposes. (Compl. at ¶¶ 4, 10-11.) RMS is a debt collector who mailed a debt

4

collection letter to Plaintiff regarding an alleged debt owed to "VONAGE." (Compl. at ¶¶ 5-10, <u>Exhibit A</u>.)

The reverse side of RMS' letter includes the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer pursuant to 15 U.S.C. § 1692g. The face of the letter contains the following statements, which Plaintiff alleges contradict the validation notice:

```
If you have not yet been contacted by an RMS representative, you will be
receiving a call to bring this matter to a resolution.  Should you
receive this letter after a discussion with our representative, we thank
you for your cooperation.
```

. . .

**IMPORTANT: REFER TO CLAIM NUMBER IN ALL COMMUNICATIONS**
**WE ARE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND**
**ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

(Am. Compl., ¶¶ 16, 17).

The statement that RMS would call the consumer is confusing and misleading. The unsophisticated consumer would understand it to mean that RMS would be contacting the consumer within thirty days, and that he could dispute the debt at that time. (Am. Comp. ¶¶ 27-32). If RMS did not call within thirty days, the consumer would have foregone his rights to prevent RMS from assuming the validity of the debt and require RMS to provide verification of the debt. (Am. Compl. ¶¶ 33-35). The statement: "IMPORTANT: REFER TO CLAIM NUMBER IN ALL COMMUNICATIONS" (all capital letters in the original) is also confusing and misleading because the unsophisticated consumer would understand it to mean that RMS would not be required to process the consumer's dispute unless his dispute specifically referenced his "claim number." The plain language of the statute does not require consumers to reference their account numbers, and RMS cannot condition the processing of consumer disputes

5

on this information. 15 U.S.C. § 1692g(a)(3)-(5). Because RMS' letter misleads consumers as to the dispute process, its letter violates the FDCPA as a matter of law, and its motion to dismiss should be denied.

## ARGUMENT

### I.     LEGAL STANDARDS

#### A.     Standard on a Motion to Dismiss

A claim for relief must be supported by "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see also Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). A court must "accept as true all well-pleaded facts alleged, drawing all possible inferences in the plaintiff's favor." *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but must only exhibit "facial plausibility" by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs are not required to prove their case at the pleading stage. *Brooks*, 578 F.3d at 580-81; *In re: Text Messaging Antitrust Litig.*, 630 F. 3d 622, 629 (7th Cir. 2010).

"A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *3 (E.D. Wis. Sept. 29, 2017) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir.

6

2015)). "Requests for relief as to part of a claim are a matter for summary judgment." *Id.* (citing Fed. R. Civ. P. 56(a)).

## B.    FDCPA Standards

"The FDCPA was enacted in part 'to eliminate abusive debt collection practices by debt collectors' . . . regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) (quoting 15 U.S.C. § 1692(e)). The FDCPA broadly prohibits unfair or unconscionable collection methods; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692e, 1692f, and 1692g. The FDCPA is a strict liability statute, and plaintiffs in FDCPA cases do not need to allege or prove intent, bad faith, or negligence. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004); *Ross v. MRS Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007). Instead, the Seventh Circuit strictly applies the FDCPA's "comprehensive and reticulated statutory scheme, involving clear definitions, precise requirements, and particularized remedies[.]" *Evans*, 2018 U.S. App. LEXIS 11372, at *14; *see, e.g.*, *Janetos*, 825 F.3d at 324 ("Congress decided that the failure to make the disclosure [of the name of the creditor] is a failure the Act is meant to penalize."); *Jang*, 122 F.3d 480, 484 (7th Cir. 1997) ("it is for Congress, and not the courts, to close this alleged loophole in the FDCPA.").

Whether conduct violates the FDCPA is judged from the standpoint of a hypothetical "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994).[2] The standard is objective—whether the

---

[2] Plaintiff's WCA claims are also evaluated under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 309, 314-15 (Wis. 2010) (discussing *Gammon*, 27 F.3d at 1257 and adopting the standard "consistent with federal policy."). Because Plaintiff's WCA claims are tied to

7

plaintiff or any class members were misled is not an element of a cause of action. *Bartlett,* 128

F.3d at 499. The FDCPA prohibits debt collectors from making false, deceptive, or confusing

statements, and misrepresentations cause concrete harm whether the individual consumer was

personally deceived or not. *Bartlett*, 128 F.3d at 499; *Pogorzelski v. Patenaude & Felix APC*,

2017 U.S. Dist. LEXIS 89678, at *6-9 (E.D. Wis. June 12, 2017). The unsophisticated consumer

reads collection letters literally but does not read them idiosyncratically, and the critical question

in evaluating whether a debt collection letter violates the FDCPA is if the letter might similarly

confuse or mislead "a significant fraction of the population[.]" *Durkin v. Equifax Check Servs.,*

*Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (quoting *Retrieval Masters Creditors Bureau, Inc.*, 211

F.3d 1057, 1060 (7th Cir. 2000)).

The Seventh Circuit treats claims that language in a debt collection letter is deceptive,

misleading, or confusing as a question of fact that avoids dismissal on a Rule 12(b)(6) motion if

well-pleaded. *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 775-76 (7th Cir. 2007)

("Other circuits, perhaps less kindly disposed to survey evidence than we, treat the deceptive

character of a debt collector's communication as a question of law, so that if the communication

is not deceptive on its face, the plaintiff is forbidden to try to show that it would be likely to

deceive a substantial number of its intended recipients. We disagree with that position."); *see*

*also, McMillan v. Collection Professionals*, 455 F. 3d 754, 759 (7th Cir. 2006).

Following *Evory*, the Seventh Circuit has enumerated three categories of FDCPA cases

alleging false or deceptive statements: 1) statements that are plainly not misleading or

deceptive on their face (summary judgment for Defendant); 2) statements that are not

his FDCPA claims, and RMS' liability under the WCA is premised on its liability under the FDCPA, the
WCA claims need not be discussed independently. (Dkt. No. 19 at 13); *see, Al v. Van Ru Credit Corp.*,
2018 U.S. Dist. LEXIS 70321, at *10 n.2.

8

plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated

consumer (extrinsic evidence necessary); and 3) statements that are plainly deceptive

communications (summary judgment for plaintiff without extrinsic evidence)). *Ruth v.*

*Triumph P'Ships*, 577 F.3d 790, 800-01 (7th Cir. 2009).[3]  As expressed in *Evory*, a

plaintiff need not show confusion or deception to survive a motion to dismiss; the claim

survives as long as the language *seems like it could* deceive or confuse. *Evory*, 505 F.3d

at 776-77.  The standard for finding that a debt collection letter complies with the

FDCPA as a matter of law at the pleading stage is an extremely heavy burden for a

defendant to meet.  *McMillan*, 455 F.3d at 759.  This Court need not decide whether

RMS' letter is misleading or confusing on its face; it need only consider whether the

letter is "patently not misleading and would not mislead any reasonable consumer, even

an unsophisticated one[.]"  *Johnson v. Enhanced Recovery Co., LLC*, 228 F. Supp. 3d

870, 875 (N.D. Ind. Jan. 17, 2017).

## II.  THE STATEMENTS THAT IT IS "IMPORTANT" THAT THE CONSUMER PROVIDE HIS RMS CLAIM NUMBERS AND THAT RMS WILL TELEPHONE THE CONSUMER CONTRADICT AND OVERSHADOW THE VALIDATION NOTICE.

RMS' initial collection letter plausibly violates the FDCPA in two ways.  First, RMS'

letter falsely states or implies to the unsophisticated consumer that RMS is not required to

---

[3]  The complaint in this action alleges violations of 15 U.S.C. §§ 1692e and 1692g. Regardless, the standards for determining whether the complaint states a claim are the same.  *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 760 (7th Cir. 2006) ("We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis.").

Also, although not necessarily relevant at the pleadings stage, the Seventh Circuit has also enumerated a fourth type of case under 15 U.S.C. § 1692e, where the plaintiff may proceed to trial on a debt collection letter's language alone, when that language is ambiguous and confusing, but not plainly contradictory, misleading, or deceptive.  *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629-30 (7th Cir. 2009); *see also Spuhler v. State Collection Servs.*, 2017 U.S. Dist. LEXIS 210895, at *20 (E.D. Wis. Dec. 22, 2017).

9

process the consumer's dispute unless he provides his "claim number." Second, the letter falsely states or implies to the unsophisticated consumer that he does not need to initiate contact with RMS to dispute the debt and prevent RMS from assuming its validity.

**A.** **The FDCPA's statutory debt validation process.**

Congress created the statutory debt validation process because of the "recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988). The straightforward statutory validation process was adopted in 15 U.S.C. § 1692g:

**(a) Notice of debt; contents**

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b) Disputed debts**

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

The thirty-day validation period described in 15 U.S.C. § 1692g(a)(3)-(5) and referenced in 15 U.S.C. § 1692g(b) begins when the consumer receives the validation notice, and the consumer may mail out a dispute letter on the thirtieth day. *E.g., Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997); *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008).

Each dispute-related subsection of 15 U.S.C. § 1692g(a) informs the consumer that she has certain rights. First, 15 U.S.C. § 1692g(a)(3) informs the consumer that the debt collector may not assume the debt is valid until the consumer's thirty-day validation period has lapsed. *See Avila*, 84 F.3d at 226 ("Essentially, the notice required by § 1692g must tell the target that she has 30 days to dispute the validity of all or a portion of the debt. If not disputed, the debt collector may assume the debt to be valid."). Second, 15 U.S.C. § 1692g(a)(4) informs the consumer that, if she communicates her dispute in writing, the debt collector will obtain and provide verification of the debt. 15 U.S.C. § 1692g(b); *see also, Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) (debt collector is not actually required to obtain verification if

11

it ceases collection instead). And third, 15 U.S.C. § 1692g(a)(5) informs the consumer that, if the original creditor has sold the debt to a third party, and the consumer makes a written request for the original creditor's name and address, the debt collector will obtain and provide this information. 15 U.S.C. § 1692g(b); *see also, Jang*, 122 F.3d at 483 (debt collector is also not required to provide name and address of original creditor if it ceases collection).

Notably, the FDCPA imposes affirmative duties to provide verification on debt collectors who receive written disputes through 15 U.S.C. § 1692g(a)(4)-(5). Importantly, though, the consumer can prevent the debt collector from assuming a debt is valid without disputing the debt in writing. *Evans*, 2018 U.S. App. LEXIS 11372, at *15 n.6 ("In fact, the debtor need not even put the dispute in writing to comply with § 1692e(8)."). "Thus, subsection 1692g(a)(3) provides some protection to those consumers who dispute a debt but are unable to do so in writing, perhaps the very consumers who are more likely to be unsophisticated." *Spearman v. Tom Wood Pontiac-GMC*, 2002 U.S. Dist. LEXIS 24389, at *27-28 (S.D. Ind. Nov. 4, 2002). Hence, under § 1692g(a)(3), a debt collector may not assume a debt is valid if it has been actually disputed, and even if it has not yet been disputed, the debt collector may not assume it is valid until the validation period has closed. *Avila*, 84 F.3d at 226; *Spearman*, 2002 U.S. Dist. LEXIS 24389, at *26 ("if a dispute is received within thirty days, then the debt collector may not assume the debt is valid."). The assumption that a debt is valid has important implications to the consumer and the debt collector. *See, e.g., Trull v. GC Servs. Ltd. Pshp.*, 961 F. Supp. 1199, 1205 (N.D. Ill. Mar. 24, 1997) (debt collector's statement that "we assume this debt is correct" impermissibly overshadowed and contradicted the notice that the debt collector would not assume the debt was valid until the validation period had run).

12

The FDCPA further requires that the disclosures 15 U.S.C. § 1692g(a) requires----the amount of the debt, the name of the creditor to whom the debt is owed, and the consumers' rights to dispute the debt---be made in a non-confusing manner. *E.g., Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004) (debt collector violates 15 U.S.C. § 1692g(a)(1) by disclosing the amount of the debt in a confusing manner); *Janetos v. Fulton Friedman & Gullace, L.L.P.*, 825 F.3d 317, 323 (7th Cir. 2016) (debt collector violates 15 U.S.C. § 1692g(a)(2) by disclosing the name of the creditor in a confusing manner); *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (debt collector violates 15 U.S.C. §§ 1692g(a)(3)-(5) by confusing consumers about the length of the validation period); *Bartlett v. Heibl*, 128 F.3d 497, 500-01 (7th Cir. 1997) (debt collector violates 15 U.S.C. §§ 1692g(a)(4)-(5) FDCPA by stating that debtor could be sued during the validation period without explaining that, if the consumer disputed the debt in writing, the debt collector would not sue the debtor until after verification). Following the Seventh Circuit and courts throughout the country, Congress amended 15 U.S.C. § 1692g(b) to statutorily prohibit communication that is inconsistent with these disclosures. 15 U.S.C. 1692g(b) ("Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.").

RMS' letter violates this statutory prohibition in two ways. First, RMS' letter states that it is "IMPORTANT" that consumers provide their claim numbers in "all communications." RMS must process a consumer's dispute whether he references his claim number or not. Even assuming RMS does, in fact, process consumer's disputes without a claim number, other debt collectors could use similar form letters representing that it is "IMPORTANT" that the consumer

provide this information to deceive consumers into believing their disputes had not been communicated effectively. Second, RMS' letter states that the consumer should expect a telephone call from RMS, which directly contradicts the disclosure that the consumer must notify the debt collector to prevent it from assuming the debt is valid. The statement that RMS will call the consumer during the validation period leads the consumer to believe he can wait until RMS calls, and dispute the debt at that time. Since RMS may not be able to call the consumer at all, let alone call him during the validation period---after which RMS would assume the debt was valid---the statement that the consumer should expect to receive a call during the validation period misleads and confuses the consumer about his dispute rights.

**A. The statement that it is "important" for the consumer to provide his RMS Claim Number is plainly deceptive and misleading, and confuses the consumer about his statutory rights.**

A debt collector is required to process a consumer's dispute whether or not the consumer provides his account number, and the debt collector may not impose extra-statutory hurdles on consumers to reduce the number of disputes they need to process. RMS' statement that it is "IMPORTANT" that the consumer provide his "CLAIM NUMBER IN ALL COMMUNICATIONS" is materially misleading because the consumer would understand it to mean that RMS would not process a dispute that did not reference his claim number. If the consumer disputed the debt without providing his claim number and RMS did not cease collection or provided inadequate verification, RMS could direct the consumer to this language, and mislead him to believe RMS was not required to process the dispute.

**1. The unsophisticated consumer would understand RMS' statement that it was "IMPORTANT" that he provide his claim number to mean that RMS would not process his dispute without his claim number.**

14

RMS provided the validation notice on the reverse side of its letter. On the face of the letter, and separate from the validation notice, RMS stated: "IMPORTANT: REFER TO CLAIM NUMBER IN ALL COMMUNICATIONS." Plaintiff alleges that the unsophisticated consumer would understand the above language to mean that RMS would not process the consumer's dispute unless he provided his claim number when he disputed the debt. RMS argues that this language "is not an added requirement, but instead a way to ensure that RMS is able to efficiently verify the debt by including identifying information on the dispute." (Dkt. No. 19 at 6). According to RMS, "RMS routinely has multiple accounts placed for collection involving the same individual[,]" and RMS needs the account number because "[a] consumer may seek to dispute one of the accounts but not dispute another." (Dkt. No. 19 at 7). But, unfortunately for RMS, the consumer has no duty to streamline the dispute process to make things easy for debt collectors. *E.g., Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 751 (N.D. Ill. Nov. 2, 2016) ("While directing a letter to the disputes department may have been a more precise method of indicating a dispute, the FDCPA does not designate a specific recipient for dispute letters."), *aff'd by, Evans*, 2018 U.S. App. LEXIS 11372.

RMS relies on *Thomollari v. CMRE Fin. Servs.*, Case No. 17-cv-533, Decision and Order dated August 28, 2017 ("*Thomollari*"), to support its position that RMS did not violate the FDCPA simply because it requested the consumer's claim number. But RMS' argument misinterprets *Thomollari*, and glosses over key factual differences.

*Thomollari* is inapposite because the purported request for the consumer's account number was communicated with different language and within a different context from RMS's letter. In *Thomollari*, the Court found that CMRE's letter "merely requests" the consumer's

15

account number. *Thomollari*, No. 17-cv-533, at 6-7. But the "request" in this case differs from the request in *Thomollari* in two important ways: 1) RMS states that it is "IMPORTANT" that consumers provide their account numbers; and 2) RMS' "request" was not located within the validation notice.

### i. RMS states the claim number is "IMPORTANT."

In *Thomollari*, the court found the debt collector's statement that "Your letter should refer to the above-referenced CMRE account number, and statement date," was simply "**asking** the consumer to reference CMRE's account number[.]" *Thomollari*, No. 17-cv-533, at 4, 6-7 (emphasis added).[4]

Unlike CMRE, RMS does not simply "ask" the consumer to reference his claim number, it tells him that it is "IMPORTANT" that he do so. If a consumer communicated his dispute without providing his "claim number," and RMS (or another debt collector using the same form letter) responded by informing him the dispute was ineffective because he did not provide his "claim number," the unsophisticated consumer would undoubtedly believe it was not required to process the dispute because he was at fault for not providing this "IMPORTANT" information.

RMS appears to argue that this is not a material misrepresentation because RMS would not act so unscrupulously, (Dkt. No. 19 at 7) (the statement "is not an added requirement"), but RMS cannot use its own intentions as a safety valve where other debt collectors could potentially use the same form language. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) (confusion as to the creditor's identity was material even though the debt

---

[4] To any extent that *Thomollari* suggests that a district court may reinterpret compulsory language in a debt collection letter as being permissive based on its own understanding of that language, it should not be followed. *Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *3-4 (quoting *McMillan*, 455 F.3d at 759). Notably, the plaintiff in *Thomollari* filed an appeal of the ruling on the motion to dismiss, and voluntarily dismissed the appeal. *Thomollari v. CMRE Fin. Svcs.*, Appeal No. 17-3379 (appeal filed Nov. 20, 2017) (Appellate Dkt. No 5-9).

16

collector was actually authorized to collect debts on the creditor's behalf because "not all consumer debtors will be so lucky."); *Pantoja v. Portfolio Recovery Assocs., LLC*, 78 F. Supp. 3d 743 (N.D. Ill. 2015); *aff'd*, 852 F.3d 679 (7th Cir. 2017) ("Defendant's argument that the statute of limitations is not revived because its policy is not to revive time-barred debts is pure sophistry. The debt is revived by operation of law, not at defendant's election.").  The issue is not whether RMS *actually* attempts to avoid processing disputes, it is whether the consumer could understand the statement to mean that RMS *could* avoid processing them.  The FDCPA prohibits communication that conflicts with the *disclosure* of the dispute rights, even if the debt collector's actual validation practices otherwise comply with 15 U.S.C. § 1692g.  15 U.S.C. § 1692g(b); *e.g., Barlett*, 128 F.3d at 500; *see also, Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1274 (11th Cir. 2016) ("We reject the notion that § 1692g gives debt collectors discretion to omit the 'in writing' requirement or cure improper notice by claiming waiver.").  At the pleadings stage, RMS is not entitled to its self-serving interpretation that the unsophisticated consumer would understand its "IMPORTANT" instruction to reference the consumer's claim number to be a mere "request."  (Dkt. No. 19 at 7).

### ii.  The unsophisticated consumer could miss the instruction to include the claim number because it is outside the validation notice.

Relatedly, RMS' letter also differs from the letter in *Thomollari* because the request in the *Thomollari* letter was found *inside* the validation notice.  *Thomollari*, No. 17-cv-533 at 4.  Thus, there was no way for the consumer to read the validation notice without knowing the request applied to all dispute letters.  *Thomollari* was not decided on materiality grounds but a potential materiality issue was clearly central to its reasoning: "the letter merely requests that when disputing the debt the consumer reference two pieces of information . . . *which are found on the*

17

*letter itself.*"  *Thomollari*, No. 17-cv-533 at 6-7 (emphasis added).[5]  Materiality implicitly

underpins the *Thomollari* reasoning: since the account number was in the letter itself, requesting

that information would not burden the consumer.  And there was no potential for deception:

because the request itself was in the validation notice, and because the court found that nothing

in CMRE's letter implied that CMRE would not process a dispute if the consumer did not

provide the requested information, there was no concern that the consumer might attempt to

communicate his dispute without providing this information, only to be later informed that

CMRE avoided processing the dispute because he did not provide his account number.

 Unlike the debt collector in *Thomollari*, RMS tells the consumer it is "IMPORTANT" to

provide his claim number on the first page of its letter, but provides the validation notice on its

reverse side.  As a result, it is entirely plausible that the consumer might not realize that the debt

collector "needed" this "IMPORTANT" information to process his dispute until RMS pointed it

out to him after he submitted the dispute (and after the statutory thirty-day period had lapsed).

Although RMS argues that it processes consumers' disputes whether or not they provided their

claim numbers, the Court cannot make an exception for RMS where unscrupulous debt collectors

might potentially use the same form letter.  *See Janetos*, 825 F.3d at 325; *McCabe v. Crawford &*

*Co.*, 272 F.Supp.2d 736, 742-44 (N.D. Ill. July 8, 2003) (rejecting the argument that a debt

collector's voluntary policy to honor oral disputes excused the failure to state that verification

rights must be invoked in writing) (*citing Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker,*

*LLP*, 217 F. Supp. 2d 336, 340 (E.D.N.Y. 2002)); *see also, Nero v. Law Office of Sam Streeter,*

---

[5] Notably, the issues in *Thomollari* were not decided by the Seventh Circuit because the *Thomollari* case
was resolved before the Seventh Circuit heard the appeal.  RMS also makes a materiality argument that
"the validation notice includes the claim number and simply requests the consumer to include it on the
dispute."  (Dkt. No. 19 at 9-10).  Under *Janetos*, whether the consumer's "claim number" was on the
letter itself is not relevant to the § 1692g claims.  825 F.3d at 324.

*P.L.L.C.*, 655 F. Supp. 2d 200, 206 (E.D.N.Y. Sept. 10, 2009) ("[i]t makes no difference whether Streeter Law would have honored an oral request.").

> **2.** **The FDCPA does not allow debt collectors to avoid processing disputes simply because an alleged debtor did not provide his account number.**

Nothing in the FDCPA allows the debt collector to condition processing a dispute on the consumer providing his account number, and 15 U.S.C. § 1692e prohibits the debt collector from deceiving the consumers into believing it needs this information. There are no magic words that debtors must use to dispute their debts. *Evans*, 2018 U.S. App. LEXIS 11372, at *14 (The FDCPA "does not require that the Letter use the word 'dispute.'"); *see also, DeKoven*, 599 F.3d at 582 ("'dispute' is a term of art in the Fair Debt Collection Practices Act."). The debt collector cannot reinterpret a dispute letter as being anything other than a dispute, *Evans*, 2018 U.S. App. LEXIS 11372, at *14-15, and the consumer triggers his dispute rights as long as he timely objects to the debt collector's allegation that he owes the debt. *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014). Any "request to verify the existence of a debt constitutes a 'dispute' under the Act[] . . . because unsophisticated consumers cannot be expected to assert their rights in legally precise phrases." *Gruber*, 742 F.3d at 274; *see also, Evans*, 2018 U.S. App. LEXIS 11372, at *14-15.

A debt collector cannot impose, or claim to impose, additional, extra-statutory requirements on a debtor who wishes to dispute a debt. As long as the debt provides the debt collector with a written notice of dispute within the thirty-day statutory validation period, the debt collector must process the dispute as set out in the FDCPA and the WCA. *E.g.,* 15 U.S.C. § 1692g(b); Wis. Stat. § 427.104(1)(f) ("a debt collector may not---disclose information concerning the existence of a debt known to be reasonably disputed by the customer without

19

disclosing the fact that the customer disputes the debt.").  For example, *Evans* addressed a debt

collector's duty to process client representation letters where the statement "'the amount reported

is not accurate' is tucked . . . into the representation letters' . . . between the statements: 'This

client regrets not being able to pay'; and 'If their circumstances should change, we will be in

touch.'"  *Evans*, 2018 U.S. App. LEXIS 11372, at *15 n.7.  The Seventh Circuit held that the

debt collector violated the FDCPA by reporting the debts to consumer reporting agencies without

the "disputed" flag.  *See* 15 U.S.C. § 1692e(8).  The Seventh Circuit rejected the debt collector's

argument that the language disputing the debt was ambiguous and the letter was not sent to the

debt collector's disputes department.  *Evans*, 2018 U.S. App. 11372, at *13-15.

     Congress has expressly set forth a specific process for consumers who wish to dispute

their debts.  Debt collectors may not circumvent the congressional mandate that they verify (or

stop collecting) those debts as long as consumers follow the statutory process.  Unlike the

primarily automated debt collection process writ large, dispute letters and verification requests

must be processed by hand, and sometimes by an attorney's hand.  *See Blarek v. Encore*

*Receivable Mgmt.*, 2007 U.S. Dist. LEXIS 22549, at *36-42 (E.D. Wis. Mar. 27, 2007) (the

hand-processed validation process is not a procedure reasonably adapted to avoid creditor

identification errors made during the automated debt collection process).  Hence, debt collectors

are strongly motivated to avoid processing disputes because written disputes both cause debt

collectors to incur costs of time and money to validate debts, and also put the collector at risk of

FDCPA liability for the subsequent communications related to validation.  *See, e.g., Haddad v.*

*Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785-86 (6th Cir. 2014) (debt

collector's response to consumer's verification request was insufficient and violated 15 U.S.C.

§§ 1692e and 1692g). Debt collectors may also be concerned that creditors, who must also respond to validation requests, would be hesitant to refer accounts to debt collectors whose letters result in disputes, "wasting" the creditors' time by requiring responses. In passing the FDCPA, Congress set out a process for consumers to dispute debts, and deliberately made that process simple and straightforward "to eliminate abusive debt collection practices," 15 U.S.C. § 1692(e), including the collection of unverifiable debts. Debt collectors cannot avoid verifying debts by superimposing extra-statutory steps onto that simple, straightforward, statutory process.

The debt collector cannot condition processing disputes on inclusion of specific account information. *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 (7th Cir. 2008) (request that consumer confirm amount owed was not confusing because "[t]he form does nothing to imply that confirmation is obligatory."). To communicate a dispute, "one only need write a letter . . . and state simply, 'I dispute the debt.' These four words alone activate all of [the debt collector's] obligations under the FDCPA." *McKinney*, 548 F.3d at 507 (J. Rovner, concurring in part and dissenting in part); *see also, Sengenberger v. Credit Control Servs.*, 2010 U.S. Dist. LEXIS 43874, at *9-10 (N.D. Ill. May 5, 2010). In fact, *Sengenberger* concerned this exact issue. *Id.* The debt collector contacted the plaintiff on his cell phone, potentially in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting autodialed and prerecorded message calls to wireless numbers without consent). The defendant argued that the plaintiff had previously consented to calls from the creditor, which consent could be imputed to the debt collector. *Id.* at *9. The plaintiff argued that any prior consent given to the creditor had been revoked because he had disputed the debt in writing pursuant to 15 U.S.C. § 1692g. *Id.* at *9. Judge Zagel rejected the defendant's argument that the plaintiff's written

21

notice of dispute was not effective "because it did not contain any information as to the specific account number and because Plaintiff's zip code was incorrect." *Id.* at *10. "[T]he statute does not explicitly name either of those criterion as necessary to halt collection calls regarding disputed debts." *Id.* In a later case, Judge Zagel made it clear that the critical issue in *Sengenberger* was that the plaintiff had effectively disputed the debt under the FDCPA. *Frausto v. IC Sys.*, 2011 U.S. Dist. LEXIS 93514, at *8 (N.D. Ill. Aug. 22, 2011). *Sengenberger* was decided before *Gruber* and *Evans* and does not cite *McKinney* or *DeKoven*, but the decision accords with the plain language of the FDPCA and the Seventh Circuit cases holding that a debtor can dispute a debt without using any magic words or providing any specific information. *Gruber*, 742 F.3d at 274; *DeKoven* 599 F.3d at 582.[6]

Moreover, RMS' argument that it needs the account's claim number if it has more than one account for an individual consumer, (Dkt. No. 19 at 7), is meritless. If RMS cannot identify which account the consumer disputes, the proper course is to simply mark *all* of those debts as disputed, and provide verification for each one. *See Washington v. Convergent Outsourcing, Inc.*, 2017 U.S. Dist. LEXIS 41814, at *6-7 (N.D. Ill. Mar. 23, 2017) (jury could conclude that the consumer's dispute that "the amount reported [was] not accurate" could mean the consumer cable bill dispute applied to the service fee debt and the equipment fee debt).

RMS cannot simply avoid processing disputes because the consumer did not reference his claim number and it cannot deceive consumers into believing it can. While providing an account

---

[6] Although *Sengenberger* correctly analyzed the effectiveness of the consumer's written dispute under the FDCPA, the TCPA does not actually require consumers to revoke consent in writing. *ACA Int'l v. FCC*, 885 F.3d 687, 692 (D.C. Cir. 2018) ("We uphold the [Federal Communication] Commission's approach to revocation of consent, under which a party may revoke consent through any reasonable means clearly expressing a desire to receive no further messages from the caller."); *see also, Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 976-77 (W.D. Wis. June 20, 2013) ("Consumers have the right to revoke to consent [and] they may do so orally or in writing.").

number may not seem like much of a burden, the consumer may not see the "request" for this "IMPORTANT" information until it is too late. He may miss a number in his 10-digit "claim number" or accidentally provide his "reference number" instead of his "claim number." Or the number may be illegible because of bad penmanship, inadvertent ink smudges, or insufficient toner. RMS cannot mislead the consumer to believe that RMS can actually condition processing disputes on providing this information, but RMS's letter plausibly does exactly that. 15 U.S.C. §§ 1692e, 1692e(10), and 1692g(b).

**B. The statement that the consumer should expect a phone call from RMS violates the FDCPA because it expressly contradicts, overshadows, and confuses the disclosure that the debt collector will assume the debt is valid unless the consumer notifies the debt collector that the debt is disputed within thirty days from receipt of the notice.**

A debt collection letter that tells the consumer to expect a call from the debt collector during the validation period overshadows the statutorily required disclosure that the debt collector will assume the debt is valid unless the consumer notifies the debt collector that the debt is disputed during the validation period. *See* 15 U.S.C. 1692g(a)(3). In the Seventh Circuit, a consumer triggers protection under 15 U.S.C. § 1692g(a)(3) if he disputes the debt by telephone. *See, e.g., O'Boyle v. GC Servs.* 2018 U.S. Dist. LEXIS 82991, at *8 (E.D. Wis. May 17, 2018) ("a dispute under § 1692g(a)(3) need not be in writing.") (citing *Evans*, 2018 U.S. App. LEXIS 11372, at *13, *15 n.6); *see also, Smith v. GC Servs. L.P.*, 2017 U.S. Dist. LEXIS 93710, at *5-8 (S.D. Ind. June 19, 2017) (collecting cases and concluding that "whereas Subsections 1692g(a)(4) and (a)(5) include a writing requirement, the text of the Subsection 1692g(a)(3) 'plainly does not.'" (quoting *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 490 (4th Cir. 2014)).

23

15 U.S.C. § 1692g(a)(3) protects consumers in two distinct, but related, ways. First, if the consumer *actually* disputes the debt during the validation period, the debt collector cannot assume the debt is valid. Second, it prevents the debt collector from assuming *any* debt is valid during the validation period. *Durkin*, 406 F.3d at 416 ("**After** this thirty-day validation period expires, the debt collector may assume that the debt is valid.") (emphasis added); *see Avila*, 84 F.3d at 226 ("[S]he has 30 days to dispute the validity of the debt. ***If not disputed***, the collector may assume the debt to be valid.") (emphasis added); *Booth v. Collection Experts*, 969 F.Supp. 1161, 1165 (E.D. Wis. Mar 18, 1997) (quoting *Avila*); *Trull*, 961 F. Supp. at 1205 (statement that "we assume this debt is correct" overshadowed § 1692g(a)(3) disclosure); *Palmer v. Stassinos*, 348 F. Supp. 2d 1070, 1083 (N.D. Calif. Dec. 14, 2004) ("the debtor has thirty days to dispute the validity of the debt, ***after which*** the collector will assume the debt to be valid."); *see also* 15 U.S.C. § 1692g(b).

> **1.     The unsophisticated consumer would understand RMS' statement that he should expect a call from RMS if he had not already been contacted to mean that RMS would call him during the validation period.**

How an unsophisticated consumer would interpret language in a debt collection letter is a question of fact, and the court cannot dismiss an FDCPA claim at the pleadings stage as long as that claim is based on a plausible interpretation of the collection letter. *Evory*, 505 F.3d at 776-77. On a motion to dismiss, the court does not need to consider whether the unsophisticated consumer would actually be misled or confused by RMS' statement that he would be receiving a call during the validation period; the court need only decide whether the statement is "patently not misleading and would not mislead any reasonable consumer, even an unsophisticated one[.]" *Johnson*, 228 F. Supp. 3d at 875.

In any case, the statement is patently misleading. The unsophisticated consumer, reading RMS' letter, would undoubtedly expect RMS to call him during the thirty-day validation period. RMS' letter states: "If you have not yet been contacted by an RMS representative, you will be receiving a call to bring this matter to a resolution." (Am. Compl. ¶ 17, <u>Exhibit A</u>). The letter, on its face, suggests that a call is imminent, even suggesting that an RMS representative may already have contacted the consumer. Moreover, the next sentence actually leaves the consumer with the impression that a call is even more imminent: "Should you receive this letter after a discussion with our representative, we thank you for your cooperation." (Am. Compl. ¶ 17, <u>Exhibit A</u>). RMS argues that "[a]ny unsophisticated consumer would take this to mean that a phone call regarding resolving the matter could have already happened, but that they still have the right to dispute the debt in writing because the validation notice is still included for the consumer." (Dkt. No. 19 at 10). Of course, RMS' proposed interpretation makes no sense unless the consumer had, in fact, actually taken a call from RMS. A call either happened or did not, and any consumer who RMS had not called, or who RMS attempted to call but did not reach, would think a call was imminent, not that it "could have already happened." (Am. Compl. ¶ 38). The recipient of the letter would know if he had taken a call from RMS, and would not adopt RMS' proposed "Schröedinger's Cat" interpretation. (Am. Compl. ¶ 31).

> **2. Telling the consumer to expect a telephone call from the debt collector during the validation period contradicts and overshadows the disclosure that the debt collector will assume the debt is valid unless the consumer notifies the debt collector that it is disputed within thirty days from receiving the validation notice.**

An initial debt collection letter cannot make the unsophisticated consumer believe that the debt collector will call him during the validation period because this directly conflicts with the

statutorily required disclosure that the debt collector will assume the debt is valid unless the

consumer notifies the debt collector that there is a dispute. RMS argues that the representation

that it will call the consumer during the validation period does not contradict the consumer's

right to dispute the debt in writing under 15 U.S.C. § 1692g(a)(4) because the representation that

RMS will call the consumer does not imply that RMS will provide verification if the consumer

disputes the debt by phone. (Dkt. No. 19 at 12-13). RMS' argument ignores entirely the fact

that a debt collector may overshadow the § 1692g(a)(4) disclosure by encouraging the debtor to

dispute the debt orally even if it does not expressly say it will verify the debt upon oral dispute.

*E.g., Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *17-20

(N.D. Ill. Mar. 13, 1997), *modified on reconsideration*, 1997 U.S. Dist LEXIS 6070 (N.D. Ill.

Apr. 29, 1997). In fact, it is well-established both within and outside the Seventh Circuit that a

debt collector may not imply that consumers should communicate their disputes orally because

this engenders confusion and encourages consumers to forego their rights to require that debt

collectors verify debts.[7] RMS also does not address the claim that the statement is inconsistent

---

[7] *See Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates § 1692g(a) by failing to inform consumers that requests under subsections (a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F.Supp.2d 736, 742-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Hernandez v. Guglielmo*, 2012 U.S. Dist. LEXIS 39686, at *5-6 (D. Nev. Mar. 23, 2012); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990); *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 151-152 (3d Cir. 2013); *Rhoades v. West Virginia Credit Bureau Reporting Servs.*, 96 F. Supp. 2d 528, (S.D. W. Va. May 10, 2000); *O'Chaney v. Shapiro & Kreisman*,

with the dispute process because RMS would be required to cease collecting the debt if the consumer disputed it in writing while it provided verification, in which case RMS would not call the consumer until after it provided verification, and could not call him at all unless the debt was actually valid.  Finally, RMS utterly fails to address Plaintiff's claim that informing the consumer that he can expect a call from the debt collector directly overshadows and contradicts the § 1692g(a)(3) disclosure that the consumer must notify the debt collector about a dispute to prevent the debt collector from assuming the debt is valid.  (Am. Compl. ¶¶ 31, 68).

The consumer is not required to communicate his dispute in writing unless he wishes to receive verification of the debt,  *e.g., Smith*, 2017 U.S. Dist. LEXIS 93710, at *7-8; *see also, Evans*, 2018 U.S. App. LEXIS 11372, at *14-15 n. 6, and unsophisticated consumers are especially reliant on the proper disclosure that they must take affirmative action to notify the debt collector that the debt is disputed if they wish to enjoy protection under 15 U.S.C. § 1692g(a)(3).  *See Walters v. PDI Mgmt. Servs.*, 2004 U.S. Dist. LEXIS 13972, at *17 (S.D. Ind. Apr. 6, 2004) (consumers who dispute debts orally are "perhaps the very consumers who are more likely to be unsophisticated.") (quoting *Spearman*, 2002 U.S. Dist. LEXIS 24389, at *7).  The representation that the debt collector will call him during the validation period is necessarily inconsistent with the disclosure that the consumer must affirmatively notify the debt collector to prevent it from assuming the debt is valid.  The unsophisticated consumer would believe that he can simply wait for the debt collector to call him, and dispute the debt at that time.

RMS attempts to avoid liability for this obvious contradiction by falsely arguing that consumers must exercise their rights under 15 U.S.C. § 1692g(a)(3) in writing, but this is not the law in the Seventh Circuit.  *Compare* (Dkt. No. 12 at 12) ("The validation notice is

_____

*LLC*, U.S. Dist. LEXIS 5116, at *12-13 (Mar. 25, 2004); *see also, Flowers*, 1997 U.S. Dist. LEXIS 3354, at *18-19.

27

communicating Plaintiff's rights to him, and notifying him that the dispute must be in writing.") *with, e.g., Spearman*, 2002 U.S. Dist. LEXIS 24389, at *26-29; *Evans*, 2018 U.S. App. LEXIS 11372, at *14-15 n.6. Thus, if the letter did in fact communicate the message RMS argues it does, *that message would violate the FDCPA. Smith*, 2017 U.S. Dist. LEXIS 93710, at *7-8.

But, notwithstanding what RMS argues its letter says, it properly informs the consumer that she may communicate her dispute orally. "Unless **you notify** this office within 30 days . . . that you dispute the debt . . . this office will assume this debt is valid." (Am. Compl., ¶ 15, Exhibit A) (emphasis added); 15 U.S.C. § 1692g(a)(3). But RMS overshadows that disclosure by telling the consumer that he does not need to call RMS because he "will be receiving a call to bring this matter to a resolution." (Am. Compl. ¶ 17, Exhibit A). The letter clearly implies that the consumer does not need to call RMS to dispute the debt because he can dispute it when RMS calls him. RMS argues that the debt collector can legally demand payment and pursue collection efforts during the validation period, (Dkt. No. 19 at 11, 12) (citing *Durkin*, 406 F.3d at 417), but this is a red herring. The issue in the case is not whether a debt collector can call the consumer during the validation period, it is whether *telling the consumer that it will call during the validation period* overshadows the disclosure that the debt collector will assume the debt is valid unless the consumer notifies the debt collector that it is disputed.

Moreover, even if the debt collector does intend to call the consumer during the validation period, implying that the consumer does not need to affirmatively contact the debt collector violates the FDCPA because the debt collector may not have the consumer's telephone number. Telephone numbers frequently change, and the number the debt collector has on file may be out-of-date. (Am. Compl. ¶ 38); *see, e.g., Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637,

28

638 (7th Cir. 2012) ("This suit arises from dozens of automated calls made to cell numbers . . . . All of the numbers were made in a futile effort to reach previous subscribers to these numbers."). Where an alleged debt is owed to a telecommunications company, as it is here, (Am. Compl. ¶ 11), it may be especially likely that the telephone number on file is out-of-date because the creditor likely terminated the consumer's telephone service. *See Soppet*, 679 F.3d at 639 ("AT&T plays Creditor; Enhanced Recovery Co. plays the role of Bill Collector.").  Moreover, because other debt collectors may use identical language in their letters without making follow-up calls, courts cannot approve collection letters that lead the unsophisticated consumer to believe that he can prevent the debt collector from assuming the debt is valid without affirmatively notifying the debt collector about the dispute.  *Janetos*, 825 F.3d at 325; *Nero*, 655 F. Supp. 2d at 206.

The unsophisticated consumer, being informed that the debt collector will call him during the validation period would be left with the impression that he should communicate his dispute when the debt collector called.  The representation overshadows the § 1692g(a)(4) disclosure that the consumer must communicate the dispute in writing to obtain verification of the debt, and it overshadows the § 1692g(a)(3) disclosure that the debt collector cannot assume the debt is valid until the validation period is over, and unless the consumer acts during the validation period it cannot prevent the debt collector from assuming the debt is valid.

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss should be denied.

Respectfully submitted,

Dated:  May 30, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
    John D. Blythin (SBN 1046105)
    3620 East Layton Avenue
    Cudahy, WI 53110
    (414) 482-8000; (414) 482-8001 (fax)
    jblythin@ademilaw.com

    ***Counsel for Plaintiff and the Proposed Class***