UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

PATRICK MANIACI,

    Plaintiff,

Case No.: 18-CV-200

v.

THE RECEIVABLE MANAGEMENT
SERVICES CORPORATION, D/B/A RMS,

    Defendant.

---

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

---

**INTRODUCTION**

Defendant The Receivables Management Services Corporation, d/b/a RMS ("RMS") moved to dismiss the current action for failure to state a claim because the language in Exhibit A to Plaintiff's Amended Complaint complies with the Fair Debt Collection Practices Act ("FDCPA") and is not misleading, confusing, contradictory, or overshadowing to Plaintiff's rights. (ECF No. 17-1 at p. 2-3.) In response to Defendant RMS's Motion to Dismiss, Plaintiff Patrick Maniaci ("Maniaci") argues that the validation notice contains language that is overshadowing but sets forth wild interpretations of how a consumer's right to dispute the debt is overshadowed. The Seventh Circuit has held that while any letter is subject to ingenious readings, not all readings support claims under the FDCPA. There is no reasonable interpretation of the language in Exhibit A to the Amended Complaint which would cause confusion or be misleading. Therefore, RMS's Motion to Dismiss should be granted.

**ARGUMENT**

I. **THE LANGUAGE IN THE VALIDATION NOTICE DOES NOT OVERSHADOW THE CONSUMER'S RIGHTS AND DOES NOT PERMIT A CLAIM UNDER THE FDCPA**

A majority of Maniaci's argument is that the language in RMS's letter requesting that the claim number be included in communication and that RMS will call or has called the consumer contradicts with, overshadows, and confuses the consumer of their rights as set forth in the validation notice. (ECF No. 20.) Plaintiff correctly cites to case law for the premise that the validation notice is required to be presented to the consumer in a non-confusing and non-contradictory manner. (Id. at 13.) *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). *Bartlett* notes that confusing the unsophisticated consumer by overshadowing the validation notice can occur when the statement is either (1) logically inconsistent with the required notice or (2) obscures the required notice, like cross talk, to make the validation notice hard to understand. *Bartlett*, 128 F.3d at 500.

Maniaci does not have a valid argument that the request to include the account number could be considered cross-talk, making the validation notice hard to understand. Further, there is no valid argument that the language regarding RMS calling the consumer to resolve or settle the matter, and referencing that the call may have either already occurred or will occur soon, is considered cross-talk or makes the validation notice hard to understand. The validation notice is on the second page of the letter, is separate and distinct from the language regarding the phone call and request to include the account number, is in compliance with the FDCPA, and is unequivocal. (ECF No. 17-1.) There is no other reasonable interpretation of the language in the validation notice other than that the consumer has the right to dispute the debt, and if they do, they may want to include the account number so as to have identifying information on the written dispute. *See, e.g., McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 758 (7th Cir.

2006)(the court need not accept a plaintiff's bizarre, peculiar, or idiosyncratic interpretation of a collection letter). Accordingly, Maniaci's claims should be dismissed.

### A. Maniaci's Arguments are "Fantastic Conjecture"

Throughout Maniaci's response brief, he posits baseless theories about the letter in an attempt to support his FDCPA claims:

- that the letter implies that RMS will not process a dispute without a claim number
- that the letter implies that RMS will contact Maniaci within the thirty day validation period
- that the letter confuses Maniaci to believe that RMS will call even if he disputes the debt
- that the letter implies that Maniaci can dispute the debt orally, confusing him of his rights.

(See ECF No. 20.) However, none of these theories or conjectures have support within the language or context of the letter. On numerous occasions, the Seventh Circuit has held that "[a]ny document can be misread. The Act is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it. The Act protects the unsophisticated debtor, but not the irrational one." *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994); *Clomon v. Jackson*, 988 F.2d 1314, 1319-20 (2d Cir. 1993). Maniaci has set forth just that: ingenious readings of a simple letter. But, those readings are irrational and cannot support a claim under the FDCPA.

A review of the language of the letter as a whole does not support the speculation propounded by Maniaci. There is nothing in the letter that explicitly states or implies that a dispute will not be processed without a claim number. (See ECF No. 17-1.) The letter states that it is "important" to include the claim number, but Maniaci has pointed to nothing to show that the claim number is obligatory. (Id.) Instead, the letter implies that it is important to help RMS identify which account is in dispute. As the court stated in *Thomollari*, "[i]t is quite clear that

3

302020787v1 1007363

CMRE's request that the consumer reference the account number and statement date in his response is simply to identify to CMRE which account is being disputed. Thus, it is apparent from a reading of this letter that 'not even a significant fraction of the population would be misled by it.'" *Thomollari v. CMRE Fin. Servs.*, No. 17-CV-533, 2017 U.S. Dist. LEXIS 220637, at *10-11 (E.D. Wis. Aug. 28, 2017).

The letter does not imply that RMS will call Maniaci within thirty days or after the thirty day validation period, but instead the language surrounding the "call language" demonstrates that a call is much more imminent, as it may have already occurred. (See ECF No. 17-1.) The arbitrary thirty-day time frame was created in Maniaci's conjecture-filled arguments. (ECF No. 20 at p. 3-5, 25.) The letter does not imply that the call will come at some point within thirty days or even after thirty days. Instead, as Maniaci acknowledges, the language "Should you receive this letter after a discussion with our representative, we thank you for your cooperation" is even more imminent. (Id. at p. 25.) Maniaci has not demonstrated how the letter implies that RMS will call at any time in the thirty day validation period. Instead, the language demonstrates that RMS will be paying immediate attention to resolve the debt. Maniaci has not stated a claim for relief.

Next, there is nothing in the letter to confuse the consumer to believe that RMS will call Maniaci even if he disputes the debt. The letter is the communication which informs Maniaci of his validation rights, but cannot be read to include cross talk that would say that RMS will call Maniaci about the debt, even if disputed. No language implies this conclusion. Further, the letter does not imply or tell the consumer that they can dispute the debt orally in an effort to confuse the consumer how to dispute the debt. The debt validation notice in RMS's letter complies with 1692g(a) in its entirety, as Maniaci admits. (ECF No. 20 at p. 5.) Therefore, since the validation

4

302020787v1 1007363
Case 2:18-cv-00200-WED   Filed 06/13/18   Page 4 of 14   Document 21

notice specifically complies with the FDCPA, the letter properly notifies Maniaci how to dispute the debt and is not hard to understand. *See Bartlett*, 128 F.3d 497.

As stated, the Seventh Circuit has explained that despite the fact that all letters can be susceptible to creative misinterpretation, "fantastic conjecture" does not create a claim under the FDCPA. *See White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000). In *White v. Goodman*, a dunning letter included a paragraph that began "The State of Colorado requires that we furnish Colorado residents with the following information. . . ." and listed rights of Colorado residents to limit communications from a debt collector. *Id*. The debtor argued that this language implied that nonresidents of Colorado did not have similar rights despite the fact that the FDCPA conferred the same rights on consumers. *Id*. The court found that this was "fantastic conjecture" and not deceptive debt collection practices. *Id*. Here, Maniaci's arguments regarding what the letter implies are akin to "fantastic conjecture." Maniaci has not demonstrated that a significant fraction of the population would be misled by the letter, and the claims should be dismissed. *McMillan v. Collection Professionals Inc*., 455 F.3d 754, 759 (7th Cir. 2006)(noting that a determination of whether a statement is false, deceptive or misleading, like a determination as to whether a statement is confusing under the FDCPA, is a fact-bound determination of how an unsophisticated consumer would perceive the statement and will not be a violation of 1692g unless "a significant fraction of the population would be . . . mislead by the letter.").

  **B.**  **Maniaci Failed To Address RMS's Argument That Other Letters Asking The Consumer To Call Have Been Deemed Not Overshadowing Of The Consumer's Rights**

Notably, Maniaci fails to even address, reconcile, or dispute RMS's argument that phone calls are allowed during the validation period, and letters that request that the consumer call the debt collector during the validation period are not overshadowing. (ECF No. 19 at p. 11-12.) *See Zemeckis v. Glob. Credit & Collection Corp*., 679 F.3d 632, 636 (7th Cir. 2012)(requests that

5

302020787v1 1007363
Case 2:18-cv-00200-WED   Filed 06/13/18   Page 5 of 14   Document 21

consumer call "now" or "today" did not contradict a right to a thirty-day validation period); *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 575-76 (7th Cir. 2004)(denying an overshadowing claim where the letter contained, after a sentence that gave a phone number that the debtor could call "to resolve [the] account," the statement: "Act now to satisfy this debt."); *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d at 417("a debt collector can bring a lawsuit during the validation period in an effort to collect a debt, . . . then certainly a debt collector can send follow-up collection letters (as well as place telephone calls) demanding payment during the validation period."); *Kolganov v. Phillips & Cohen Associates, Ltd.*, No. CV-02-3710, 2004 U.S. Dist. LEXIS 7069, 2004 WL 958028, at *4 (E.D.N.Y. Apr. 8, 2004) (The letter's validation notice stated the procedure to follow to dispute the debt. The statement "it is not in your best interest to neglect this account any further" did not overshadow the validation notice, nor did the phrase "if you have any questions, immediately contact our office at the above telephone number" by demanding immediate contact); *Lerner v. Forster*, 240 F. Supp. 2d 233, 238 (E.D.N.Y. 2003)("It does not follow that simply because a collection letter instructs a consumer to contact a debt collector that the validation notice is necessarily overshadowed or contradicted."); *Terran v. Kaplan*, 109 F.3d 1428, 1434 (9th Cir. 1997) (holding that a request for immediate telephone contact does not overshadow the mandated validation notice).

     Here, it is quite clear that the statement in the letter: "If you have not yet been contacted by an RMS representative, you will be receiving a call to bring this matter to a resolution" pertains to settlement of the debt, as with the cases mentioned herein. (ECF No. 17-1 at p. 2.) Letters that request a consumer to contact the debt collector to resolve a debt is have not been deemed overshadowing of the validation notice, it follows that a letter that informs the consumer he will be contacted to resolve the account should also not be overshadowing of the validation

notice. Therefore, RMS's argument is undisputed, the letter is analogous to the letters in these call cases, and Maniaci's FDCPA claims should be dismissed.

      **C.**      **The Case Law Cited By Plaintiff Is Overstated or Not Relevant To Claims In The Present Action**

Maniaci's lengthy response brief overstates and attempts to mash up case law in an effort to support his argument that RMS's letter somehow contradicts and overshadows the required validation notice. One thing is clear after reviewing Maniaci's response brief, Maniaci has failed to cite a comparable FDCPA case from the 7th Circuit that holds that the language similar to that in RMS's letter is overshadowing or contradictory of Maniaci's rights. (See ECF No. 20.) Also, the case law cited by Maniaci is distinguishable and inapplicable. In the interest of brevity, RMS will address Maniaci's main cases and why they do not support his claims.

      **1.**      **Maniaci's case law regarding the claim number language in the letter does not support his claims**

In RMS's Motion to Dismiss, RMS offered *Thomollari* as a similar case to the facts at hand. (ECF No. 19 at p. 5.) Maniaci argues that RMS fails to understand the differences between this case and *Thomollari*, but if anything, Maniaci has demonstrated why *Thomollari* supports RMS's position. *Thomollari v. CMRE Fin. Servs*. No. 17-CV-533, 2017 U.S. Dist. 220637*; see also Thomollari v. CMRE Fin. Servs*., No. 17-CV-533, 2017 U.S. Dist. LEXIS 178831 (E.D. Wis. Oct. 27, 2017)(mot. to reconsider affirmed). Maniaci argues that RMS does not simply ask the consumer to include the claim number, as CMRE did in *Thomollari,* but requires it. In *Thomollari*, in the middle of the required validation, the following language was included: "You may send your written request to: "CMRE FINANCIAL SERVICES INC, 3075 E IMPERIAL HWY SUITE 200, BREA, CA 92821, ATTENTION: COMPLIANCE UNIT". Your letter should refer to the above-referenced CMRE account number, and statement date." *Id*. at *2. The court found that this language "in no way overshadows, contradicts, or dilutes the consumer's

right to dispute the debt." *Id.* at *10. In making its decision dismissing the 1692g(a) claims, the court noted that nothing in the letter puts the consumer in a predicament to forego disputing the debt because he does not have suitable documentation to dispute a debt, and the consumer is also not being asked to provide a reason for disputing the debt. *Id*. The court noted that the account number, the statement date, and the address to send the dispute were all included *within the letter itself*, so the request could not be confusing. *Id*.

Here, similarly, the first page of RMS's letter tells the consumer it is important to refer to the claim number in all communications. (ECF No. 17-1 at p. 2.) While no language implies that it is mandatory, the claim number is included on the face of the letter and cannot be confusing. The language does not conflict with the disclosure of the dispute rights. The language does not make the claim number obligatory and similarly does not overshadow, contradict, or dilute the consumer's right to dispute a debt.

Maniaci argues that the current action is also different from *Thomollari* in that the request to include account information was found inside the validation notice so there was no way for the consumer to read the validation notice without knowing the request applied to all dispute letters. (ECF No. 20 at p. 17.) However, this difference is actually further support for RMS's position that the validation notice is provided to the consumer clearly and unequivocally without any language surrounding it to be overshadowing, contradictory, or diluting of their rights. The court in *Thomollari* found for the debt collector despite the added language being included within the validation notice. *See Thomollari,* No. 17-CV-533. Maniaci argues that *Thomollari* was not decided on materiality grounds, but states that:

> a potential materiality issue was clearly central to its reasoning: "the letter merely requests that when disputing the debt the consumer reference two pieces of information . . . *which are found on the letter itself*." *Thomollari*, No. 17-cv-533 at 6-7 (emphasis

8

302020787v1 1007363
Case 2:18-cv-00200-WED   Filed 06/13/18   Page 8 of 14   Document 21

> added). Materiality implicitly underpins the *Thomollari* reasoning: since the account number was in the letter itself, requesting that information would not burden the consumer. And there was no potential for deception: because the request itself was in the validation notice, and because the court found that nothing in CMRE's letter implied that CMRE would not process a dispute if the consumer did not provide the requested information, there was no concern that the consumer might attempt to communicate his dispute without providing this information, only to be later informed that CMRE avoided processing the dispute because he did not provide his account number.

(ECF No. 20 at p. 17-18.)(emphasis in original). Again, this argument supports RMS's position. The claim number is included within the letter itself. (ECF No. 17-1 at p. 2.) Requesting this information will not burden the consumer. Since the request for the claim number is not mandatory, there is no potential for deception or to be misled and there is nothing in RMS's letter that implies that RMS will not process the dispute if the consumer does not provide the claim number.

In support of his overshadowing claim, Maniaci cites to *Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 751 (N.D. Ill. Nov. 2, 2016) for the position that RMS cannot require a consumer to include a claim number on the dispute because the consumer has no duty to streamline the dispute process to make things easy for debt collectors. (ECF No. 20 at p. 15.) However, *Bowse* was a not a case about an overshadowing claim under the FDCPA. *See Bowse*, *generally*. Instead, it was case about whether or not a specific letter from an attorney constituted a dispute of the debt. *Bowse*, at 751. While the dicta in the opinion recognizes that the FDCPA does not require a specific recipient for the letters, it does not mention that it is overshadowing of a consumer's rights to simply request that a claim number, that is included within the letter, be included in communications. *Id*. Therefore, *Bowse* is inapplicable.

Maniaci next cites to *Evans v. Portfolio Recovery Assocs., LLC*, Nos. 17-1773, 17-1860, 17-1866, 17-2622, 17-2756, 18-1374, 2018 U.S. App. LEXIS 11372, at *1 (7th Cir. May 2,

9

2018) and *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014) for the position that there are no specific words or documentation required to dispute a debt. (ECF No. 20 at p. 19-20.) Those cases requesting that the consumer include a claim number, which was included on the letter, is not comparable to requiring "legally precise" or "magic" words to dispute a debt. The letter here in no way limits a consumer's right to dispute the validity of a debt, and no logical argument can be made to the contrary.

Maniaci also cites the dissent in *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496 (7th Cir. 2008) *overruled in part by Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721, 198 L.Ed.2d 177, 180 (2017)(overruling *McKinney* regarding defense concerning standing), for the proposition that a debt collector cannot condition processing disputes on inclusion of specific account information, and a dispute only needs to state "I dispute the debt." (ECF No. 20 at p. 21.) However, as stated, Maniaci was not citing the holding of the Seventh Circuit, but instead the dissent. (Id.) Further, the decision in *McKinney* actually supports RMS's position. The court determined that a form that was included with the validation of debt notice letter *permitted* the consumer to *either* confirm the debt or dispute the debt; it did nothing to imply that confirmation was obligatory. *McKinney*, 548 F.3d at 504. Similarly, here, there is nothing obligatory about the request to include the claim number in any dispute.

Maniaci next cites *Sengenberger v. Credit Control Servs.*, 2010 U.S. Dist. LEXIS 43874, at *9-10 (N.D. Ill. May 5, 2010) stating that *Sengenberger* included the exact issue at hand. (ECF No. 20 at p. 21-22.)  However, Maniaci overstates *Sengenberger*. The issue before the court in *Sengenberger* was whether a letter that Sengenberger sent to the debt collector containing a debt dispute revoked consent to call the consumer under the Telephone Consumer Protection Act. *Sengenberger*, at *9. Defendant debt collector argued that there was no revocation of consent

because the letter did not include the account number or zip code. *Id*. The court noted that the defendant did not provide support as to how those facts were relevant to revoke consent and mentioned that the statute did not include those requirements. *Id*. The issue was not whether specific language in a letter was overshadowing of the validation notice. Therefore, *Sengenberger* does not apply to the current action.

Finally, Maniaci cites to *Washington v. Convergent Outsourcing, Inc*., 2017 U.S. Dist. LEXIS 41814, at *6-7 (N.D. Ill. Mar. 23, 2017) for the position that if RMS cannot identify which account the consumer disputes, the proper course is to mark all those debts as disputed and provide verification for each one. (ECF No. 20 at p. 22.) However, Maniaci overstates the holding in *Convergent Outsourcing. Convergent Outsourcing, Inc*., 2017 U.S. Dist. LEXIS 41814. In *Convergent Outsourcing,* the consumer had an unpaid balance of $1,001 on her account. *Id*. at *1. It was reported to the credit bureaus. *Id*. Her attorneys sent a letter disputing the debt. *Id*. at *2. Shortly thereafter, the company changed its policy and reduced her unpaid balance for equipment charges, bringing the balance down to $321. *Id*. at *3. Convergent Outsourcing argued that it had no reason to know whether the first amount of $1,001 was disputed or whether the more recent $321 was disputed. *Id*. at *6. The court determined that the consumer can require the debt collector to verify the *existence* of the debt before collecting. *Id*. at *7. The court did not go so far to say, as Maniaci argues, that the debt collector should mark all debts and accounts disputed and provide verification for each one, but instead the existence of the debt. *Id*. Further explanation demonstrates that this holding does not sanction a debt collector for requesting a claim number to be included in communications. *Convergent Outsourcing* does not apply to the claims at hand, and Maniaci has not provided case law to support his claims.

    **2.**    **Maniaci's case law regarding the settlement call language in the letter does not support his claims**

302020787v1 1007363

Case 2:18-cv-00200-WED   Filed 06/13/18   Page 11 of 14   Document 21

In the last portion of Maniaci's lengthy response brief, Maniaci argues that RMS fails to address the argument that the debt collector may overshadow the validation notice by encouraging the debt collector to dispute the debt orally even if it does not expressly say it will verify the debt upon oral dispute. (ECF No. 20 at p. 26.) Maniaci cites to *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *17-20 (N.D. Ill. Mar. 13, 1997), *modified on reconsideration*, 1997 U.S. Dist LEXIS 6070 (N.D. Ill. Apr. 29, 1997) to support this position. (ECF No. 20 at p. 26.) However, *Flowers* is distinguishable and a subsequent case applying Flowers has held that a letter that requests that the debtor contact the debt collector "without further delay" does not induce a waiver of section 1692g rights. *See Vasquez v. Gertler & Gertler, Ltd*., 987 F. Supp. 652, 654 (N.D. Ill. 1997).

In *Vasquez*, the court denied the plaintiff's claims under § 1692g, as the letter was not overshadowing. The *Vasquez* court distinguished the factual scenario in *Flowers*, *v. Accelerated Bureau of Collections*. *See Vasquez*, at 658. The *Vasquez* court noted that in *Flowers*, after sending the validation notice in its first letter, the debt collector sent a second letter, without the validation notice and demanded the debtor phone or write the collection agency immediately. *Id*. The court in *Flowers* determined that the second letter implied that Flowers could dispute her debt by telephone and contradicted the first validation notice letter. *Id*. The letter in *Vasquez* was not overshadowing as it merely requested that the consumer pay "immediate attention" to the outstanding debt. *Id*. compare to *Seplak by Seplak v. IMBS, Inc.*, No. 98 C 5973, 1999 U.S. Dist. LEXIS 2106, at *17 (N.D. Ill. Feb. 22, 1999)(where court found the language "if you feel you do not owe this amount, please call," an invitation to dispute the debt orally, confusing the unsophisticated consumer).

302020787v1 1007363
Case 2:18-cv-00200-WED   Filed 06/13/18   Page 12 of 14   Document 21

Here, the factual scenario and language in RMS's letter is more akin to *Vasquez* and not even closely related to the facts in *Flowers,* and even more far afield from *Seplak by Seplak*. RMS indicates that a phone call has already occurred or is imminent to attempt to resolve or settle the account, implying that immediate attention will be given to the outstanding debt. Further, even Maniaci admits that the content of the validation notice is in proper form as required under § 1692g(a). (ECF No. 20 at p. 5.) Therefore, there is nothing in the letter that is overshadowing of Maniaci's right to dispute the debt. He is clearly informed of how to go about it and nothing implies or confuses that he should call to dispute the debt.

Because Maniaci has failed to demonstrate that a significant fraction of the population would be mislead by the letter, Maniaci's claims under 1692g(a)(3)-(5), 1692g(b), 1692e, and 1692e(10) should be dismissed. *McMillan v. Collection Professionals Inc*., 455 F.3d 754, 759 (7th Cir. 2006)(there cannot be a violation of 1692g unless "a significant fraction of the population would be . . . mislead by the letter.").

## II. MANIACI'S WISCONSIN CONSUMER ACT CLAIM SHOULD BE DISMISSED

Maniaci fails to address RMS's argument that the Wisconsin Consumer Act claims are duplicative of the FDCPA claims. Accordingly, since the FDCPA claims should be dismissed, so too should the WCA claims.

## CONCLUSION

RMS is entitled to dismissal with prejudice pursuant to Rule 12(b)(6) of Plaintiff's Complaint because Plaintiff fails to state any claim upon which relief can be granted under the FDCPA.

Dated this 13th day of June, 2018.

/s/ Alyssa A. Johnson
David M. Schultz
IL Bar No. 6197596
Alyssa A. Johnson
State Bar No. 1086085
Attorneys for Defendant THE RECEIVABLE MANAGEMENT SERVICES CORPORATION, D/B/A RMS
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue, Suite 2600
Milwaukee, WI 53202
Phone No. 414-276-6464
Fax No. 414-276-9220
E-mail Address(es):
dschultz@hinshawlaw.com
ajohnson@hinshawlaw.com